TANSEY TRACY LLC
1725 Richmond Road
Staten Island, New York 10306
(718) 233-3785
Attorneys for Plaintiff, UnitedHealthcare Insurance Company

| | |
|---|---|
| UNITEDHEALTHCARE INSURANCE COMPANY, IN ITS CAPACITY AS CLAIMS FIDUCIARY FOR THE INSPERITY GROUP HEALTH PLAN<br><br>                    Plaintiff(s),<br><br>vs.<br><br>ANDRZEJ SZCZYKUTOWICZ and KLEE, WOOLF, GOLDMAN & FILPI, LLP.<br><br>                    Defendant(s). | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK<br>CASE NO:<br><br><br>**COMPLAINT** |

Plaintiff, United Healthcare Insurance Company, in its capacity as the Claims Fiduciary for the Insperity Group Health Plan, pleads as follows:

## **PARTIES**

1. Plaintiff, UnitedHealthcare Insurance Company, is the Claims Fiduciary for the Insperity Group Health Plan, with offices located at 185 Asylum Street, Hartford, Connecticut.  As Claims Fiduciary, UHC shares responsibility for administering said Plan with Insperity Holdings, Inc., the Plan Sponsor.

2. Upon information and belief, Defendant, Andrzej Szczykutowicz, is a citizen and resident of the State of Pennsylvania with a last known address of 165 Clearview Road, Long Pond, Pennsylvania.

3. Defendant, Klee, Woolf, Goldman & Filpi, LLP is a law firm with offices located at 25 West 43rd Street, Suite 711, New York, New York.

## JURISDICTION AND VENUE

4. This action is for relief under 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1132(a)(2) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Consequently, this Court has jurisdiction pursuant to 29 U.S.C. § 1132(e) of ERISA and 28 U.S.C. § 1331.

5. Pursuant to 29 U.S.C. § 1132(e)(2) of ERISA, venue is proper in this Court because one of the Defendants resides in this District.

## GENERAL ALLEGATIONS

6. On or about May 1, 2017, Defendant, Andrzej Szczykutowicz (hereinafter "Szczykutowicz") sustained various injuries in a work-related accident when he fell from a step ladder while retrieving items from a shelf ("Accident").

7. At the time of the Accident, Szczykutowicz was a participant in the Insperity Group Health Plan ("Health Plan").

8. The Health Plan is, and was at all relevant times, an employee welfare benefits plan governed by the material provisions of ERISA.

9. Between 2017-2018, accident-related medical benefits in the amount of $217,738.47 ("Subject Benefits") were paid on behalf of Szczykutowicz under the Health Plan through a policy of insurance issued by UnitedHealthcare Insurance Company ("UHC").

10. Said insurance policy, which served as the official plan document at the time the Subject Benefits were paid, contained a "Reimbursement" provision which stated, in part:

> Reimbursement is the payment by you out of the recovery received from any third party to us to be limited to the amount of medical Benefits paid by us. We may request and receive reimbursement of any type of recovery for the reasonable value of any services and Benefits we provided to you. We may receive reimbursement for the total amount of past Benefits paid, not to exceed the amount you receive from any third party as described below:
>
> - Third parties, including any person alleged to have caused you to suffer injuries or damages.
>
> - Your employer.
>
> - Any person or entity who is or may be obligated to provide benefits or payments to you, including benefits or payments for underinsured or uninsured motorist protection, no-fault or traditional auto insurance, medical payment coverage (auto, homeowners or otherwise), workers' compensation coverage, other insurance carriers or third party administrators.
>
> - Any person or entity who is liable for payment to you on any equitable or legal liability theory.
>
> These third parties and persons or entities are collectively referred to as "Third Parties."

11. At all relevant times, Optum served as UHC's subrogation/reimbursement agent and had responsibility, in such capacity, to pursue its subrogation/reimbursement claims.

12. In or about 2017, Szczykutowicz filed a claim with the New York Workers' Compensation Board, WCB Case No. G190 6359, against his employer, St. Mary's Home for Working Girls, Inc., alleging that he sustained various injuries as a result of the Accident, including tetraplegia ("Workers' Compensation Case").

13. Szczykutowicz was represented in the Workers' Compensation Case by the Defendant, Klee, Woolf, Goldman & Filpi, LLP ("KWG&F").

3

14. Optum, by letter dated August 17, 2017, put KWG&F on notice of UHC's reimbursement interest in any recovery made by Szczykutowicz for injuries arising out of the Accident. The letter asked KWG&F to contact Optum "prior to settlement to obtain the total amount of paid benefits," and to hold any settlement funds "in trust until [UHC's] interest has been severed from the interest of your client." Attached as "Exhibit A" is a true and correct copy of the Optum's August 17, 2017 letter.

15. Thereafter, Optum faxed correspondence to KWG&F on November 9, 2017, January 14, 2018, February 13, 2018, June 12, 2018, August 6, 2018, and October 15, 2018, requesting a status on the Workers' Compensation Case.

16. In addition to said written correspondence, an Optum analyst called KWG&F on January 10, 2018 and left a voice message for attorney, Andrew B. Woolf, Esq., requesting a status update on the Workers' Compensation Case. A similar call was made to Attorney Woolf on April 11, 2018. Neither call was returned.

17. On October 16, 2018, Optum received a call from a paralegal at KWG&F requesting a payment ledger for the medical benefits at issue. Optum faxed a ledger to KWG&F the same day.

18. Optum continued to remain in communication with KWG&F about the Workers' Compensation Case throughout 2019. Such included telephone calls, faxes and emails sent and/or received on May 6, 2019, September 24, 2019, November 12, 2019, and December 12, 2019. At no point during that time did KWG&F contest UHC's right to reimbursement.

19. On June 25, 2020, an Optum analyst called and left a voicemail for Attorney Woolf requesting a status on the Workers' Compensation Case. Attorney Woolf returned the call on June 29, 2020 and advised that the Workers' Compensation Board ("WCB") had ruled in favor of Szczykutowicz's workers' compensation claim but that his employer had appealed the WCB's ruling.

20. The WCB found that accidental injury, notice and causal relationship ("ANCR") were established for Szczykutowicz's claim of tetraplegia and awarded him weekly wage payments. Upon information and belief, a total of $140,870.40 in such payments were received by Szczykutowicz through June 18, 2020 ("Award Proceeds").

21. Defendants never disclosed said award to Optum or UHC or their receipt of the Award Proceeds.

22. Though Attorney Woolf told Optum that Szczykutowicz's workers' compensation case was on appeal during the June 29, 2020 call, the claim had, in fact, been settled by the parties two weeks earlier on June 15, 2020. Pursuant to the terms of the Settlement Agreement, Szczykutowicz agreed to withdraw his workers' compensation claim for a lump sum payment of $395,000.000 ("Settlement Proceeds"). Attached as "Exhibit B" is a true and correct copy of the Settlement Agreement.

23. Defendants did not seek the approval of either Optum or UHC before entering into the Settlement Agreement.

24. On July 22, 2020, Attorney Woolf called Optum to inquire about the UHC's reimbursement rights in the event the Workers' Compensation Case was settled.

Attorney Woolf indicated that Szczykutowicz was concerned about UHC's ability to obtain reimbursement out of the proceeds of the settlement.

25. Attorney Woolf was advised by Optum that UHC's reimbursement rights were established by the terms of the plan and agreed to provide a copy of the applicable plan language. A copy of the plan document was emailed to Attorney Woolf on August 4, 2020, together with a demand for full reimbursement of the Subject Benefits out of any recovery made in connection with the Workers' Compensation Case.

26. In the absence of a reply to its August 4, 2020 email, Optum emailed Attorney Woolf on September 2, 2020 requesting a status on the Workers' Compensation Case. Attorney Woolf responded on September 4, 2020, advising that the Workers' Compensation Case had been "officially discontinued and disallowed under the Worker's [sic] Compensation Law." Attached as "Exhibit C" is a true and correct copy of Attorney Woolf's September 2, 2020 email to Optum.

27. Optum, in response to the representations made by Attorney Woolf, requested a copy of the Settlement Agreement, which KWG&F provided by email on September 4, 2020. The written terms of the Settlement Agreement, which had not been shared with Optum or UHC before that time, provided, in part, as follows:

> As Claimant is withdrawing his claim herein, there was, is and will not be, any compensable medical treatment related to this claim, and therefore, Carrier is not responsible for any Medicare liens or any health insurance company liens relating to this claim. [*See* "Exhibit B"].

KWG&F had never previously advised that the terms of the settlement purported to extinguish UHC's reimbursement rights.

28. Over the next six and a half months, Optum regularly contacted Attorney Woolf about UHC's lien, however, Attorney Woolf failed to respond to any of Optum's letters, faxes, emails, or telephone messages.

29. Optum did eventually receive a letter from Attorney Woolf on March 30, 2021 advising that Szczykutowicz's workers' compensation claim was "no longer compensable" in light of the Settlement Agreement and that "any alleged medical bills past, present and future (or from the date of the occurrence) are now the responsibility of [Szczykutowicz's] private insurance carrier and/or Optum[.]"  Defendants refused on that basis to honor UHC's lien.  Attached as "Exhibit D" is a true and correct copy of Attorney Woolf's March 24, 2021 letter.

30. Provided as an attachment to Attorney Woolf's letter was a copy of the WCB's Notice of Approval with respect to the Settlement Agreement.  Amongst other things, the Notice of Approval stated:

> [T]he Board's approval of this agreement cannot and should not be interpreted as a finding that the terms of the agreement adequately take into account the interests of Medicare or any other third party.  It is the sole responsibility of the parties to the [settlement] agreement to ensure that Medicare's or any other third party's interests are taken into account. Attached as "Exhibit E" is a true and correct copy of the September 9, 2020 Notice of Approval provided by Attorney Woolf.

Attached as "Exhibit E" is a true and correct copy of the September 9, 2020 Notice of Approval provided by Attorney Woolf.

31. Though filed more than six months earlier on September 9, 2020, a copy of said notice had not been provided to Optum before that time.

7

## COUNT ONE
### Action To Enforce An Equitable Lien By Agreement
### On The Award And/Or Settlement Proceeds

32. Plaintiff repeats and asserts the above allegations of this Complaint as if set forth at length herein.

33. The terms of the reimbursement provision set forth above create an equitable lien by agreement in the amount of the Subject Benefits on both the Award Proceeds and the Settlement Proceeds.

34. Defendants have refused to satisfy said lien.

35. Upon information and belief, all or some portion of the Award Proceeds and/or Settlement Proceeds are presently in the Defendants' possession or otherwise under their authority and control.

WHEREFORE, and pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff demands that the terms of the plan be enforced and that the Court, consistent therewith, impose an equitable lien by agreement on the Settlement Proceeds in the amount of the Subject Benefits, and that the Defendants be ordered to reimburse such amount to the Plaintiff from said proceeds, together with any judgment and post-judgment interest or other relief to which the Plaintiff is entitled, including reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) of ERISA.

## COUNT TWO
### Action To Enforce An Equitable Lien By Agreement
### On The Attorney Fees Paid Out Of The Settlement Proceeds

36. Plaintiff repeats and asserts the above allegations of this Complaint as if set forth at length herein.

37. Upon information and belief, KWG&F took a fee of $50,000.00 out of the Settlement Proceeds for legal services rendered in connection with the Workers' Compensation Case.

38. UHC, pursuant to the terms of the plan, has an equitable lien by agreement on the entirety of the Settlement Proceeds, including said legal fees.

39. Upon information and belief, all or some portion of the $50,000.00 legal fee is presently in the Defendant's possession or otherwise under its authority and control.

WHEREFORE, and pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff demands that the terms of the plan be enforced and that the Court, consistent therewith, impose an equitable lien by agreement on the legal fees paid to Defendant, Klee, Woolf, Goldman & Filpi, LLP, out of the Settlement Proceeds and that the Defendant be ordered to remit said fees to the Plaintiff in satisfaction of the lien, together with any judgment and post-judgment interest or other relief to which the Plaintiff is entitled, including reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) of ERISA.

## COUNT THREE
### Action For Breach Of Fiduciary Duty Against Klee, Woolf, Goldman & Filpi, LLP

40. Plaintiff repeats and asserts the above allegations of this Complaint as if set forth at length herein.

41. Upon information and belief, KWG&F received the Settlement Proceeds by way of check from Indemnity Insurance Company of North America, the workers'

compensation carrier for Szczykutowicz employer, on or before October 31, 2020, after which it deposited the Settlement Proceeds into its attorney trust account.

42. KWG&F, at the time it received the Settlement Proceeds, was aware, based on prior communications with Optum, that UHC had an equitable lien by agreement on said proceeds.

43. At no time while in possession of the Settlement Proceeds did KWG&F advise Optum or UHC that it had acquired same.

44. Once deposited in its trust account, KWG&F had complete authority and control over the Settlement Proceeds and was free to do with them whatever it wanted. No one else could access the Settlement Proceeds while in KWG&F's trust account giving KWG&F unfettered power with respect to their disposition. It alone could decide whether to hold or disburse the proceeds and in what amounts. All decisions regarding use of the Settlement Proceeds rested solely in the hands of KWG&F.

45. In this instance, KWG&F exercised such authority and control by writing checks against the Settlement Proceeds to pay various fees and expenses related to the Workers' Compensation Case. KWG&F also wrote a check against the proceeds to Szczykutowicz in the amount of $345,000.00 and one to itself for legal fees in the amount of $50,000.00.

46. KWG&F, as evidenced by same, had the ability to unilaterally dictate who and/or what to pay with the proceeds and when such payments would be made.

47. Upon information and belief, KWG&F disbursed all of the Settlement Proceeds on or before November 30, 2020.

48. At no time before disbursing the Settlement Proceeds did KWG&F advise Optum or UHC that it intended to do so without paying UHC's lien.

49. On October 27, 2020, Optum sent a fax to Attorney Woolf regarding payment of UHC's lien. Another similar fax was sent to Attorney Woolf on November 18, 2020. Both went unanswered. Upon information and belief, Attorney Woolf received both emails while KWG&F was still in possession of the Settlement Proceeds.

50. Thereafter, between December 2020 and March 30, 2021, Optum sent four emails, a letter, and left three voice messages for Attorney Woolf regarding payment of the lien, none of which were returned.

51. Attorney Woolf's withholding of information during the six-and-a-half-month period between October 2020 and March 2021 allowed KWG&F to keep Optum in the dark about the status of the Settlement Proceeds and to successfully shield them from UHC. Such is further proof of the total authority and control KWG&F exercised over the Settlement Proceeds both before and after their disbursement.

52. KWG&F, as described herein, functioned as a plan fiduciary by exercising authority and control over the disposition of a plan asset, namely that portion of the Settlement Proceeds subject to UHC's lien. *See* 29 U.S.C. § 1002(21)(A)(i).

53. KWG&F's status as a fiduciary is consistent with that bestowed by NYRPC 1.15 of New York's Rules of Professional Conduct. Pursuant to NYRPC 1.15:

> A lawyer in possession of any funds…belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds.

In this instance the funds "belonging to another" were those owed to UHC out of the Settlement Proceeds.

54. As a fiduciary, KWG&F was required to discharge it duties as such with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1).

55. KWG&F did not act in such manner when it failed to pay UHC's lien out of the Settlement Proceeds. Its decision to pay other things with the proceeds constituted a breach of its fiduciary duties.

56. KWG&F also breached its fiduciary duties by failing to preserve and safeguard that portion of the Settlement Proceeds needed to pay UHC's lien.

57. KWG&F's failure to provide Optum and/or UHC with information about the Settlement Proceeds, including its receipt and disbursement of same, constituted a further breach of KWG&F's fiduciary duties. Concomitant therewith, such conduct constituted a violation of New York's Rules of Professional Conduct which require lawyers to "promptly notify a…third person of the receipt of funds…in which the third person has an interest," and to "promptly pay or deliver to…[a] third person as requested by the…third person the funds…in the possession of the lawyer that the…third person is entitled to receive." NYRPC 1.15.

58. KWG&F's breaches of its fiduciary duties, as set forth above, have exposed the Settlement Proceeds to dissipation and with it the potential for destruction of UHC's lien should the proceeds be untraceable. The inability to recover on its lien would be

detrimental to UHC and to the Health Plan insofar as such has the potential to increase premiums for plan members.

WHEREFORE, Plaintiff, in its capacity as Claims Fiduciary, demands judgment against Defendant, Klee, Woolf, Goldman & Filpi, LLP, pursuant to 29 U.S.C. § 1132 (a)(2) and 29 U.S.C. § 1109(a), awarding damages in the amount of $217,738.47, together with any judgment and post-judgment interest or other relief to which the Plaintiff is entitled, including reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## COUNT FOUR
### Action For Breach Of Fiduciary Duty Against Andrzej Szczykutowicz

59. Plaintiff repeats and asserts the above allegations of this Complaint as if set forth at length herein.

60. Upon information and belief, Szczykutowicz received $345,000.00 of the Settlement Proceeds from KWG&F on or before October 31, 2020.

61. Pursuant the terms of the plan, Szczykutowicz agreed to serve as a constructive trustee over any payment received from a "potentially responsible party," including the proceeds of a settlement, and to hold any such funds "due and owing" to UHC. Such was clearly set forth by the following plan terms:

- That you agree that if you receive any payment from any potentially responsible party as a result of an injury or illness, whether by settlement (either before or after any determination of liability), or judgment, you will serve as a constructive trustee over the funds, and failure to hold such funds in trust will be deemed as a breach of your duties hereunder.

- That you or an authorized agent, such as your attorney, must hold any funds due and owing us, as stated herein, separately and alone, and failure to hold funds as such will be deemed by us to be a breach of contract, and may result in the instigation of legal action against you.

62. Szczykutowicz, as described herein, functioned as a plan fiduciary by exercising authority and control over the disposition of a plan asset, namely that portion of the Settlement Proceeds subject to UHC's lien. *See* 29 U.S.C. § 1002(21)(A)(i).

63. As a fiduciary, Szczykutowicz was required to discharge it duties as such with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. §1104(a)(1).

64. Szczykutowicz did not act in such manner and breached his fiduciary duties to UHC when he failed to pay UHC's lien out of the Settlement Proceeds and misappropriated said proceeds to his own use.

65. Szczykutowicz also breached his fiduciary duties by failing to hold and safeguard that portion of the Settlement Proceeds due and owing to UHC.

66. Szczykutowicz's breaches of his fiduciary duties, as set forth above, have exposed the Settlement Proceeds to dissipation and with it the potential for destruction of UHC's lien if the proceeds are untraceable. The inability to recover on its lien would be detrimental to UHC and to the Health Plan insofar as such has the potential to increase premiums for plan members.

WHEREFORE, Plaintiff, in its capacity as Claims Fiduciary, demands judgment against Defendant, Andrzej Szczykutowicz, pursuant to 29 U.S.C. § 1132 (a)(2) and 29 U.S.C. § 1109(a), awarding damages in the amount of $217,738.47, together with any judgment and post-judgment interest or other relief to which the Plaintiff is entitled, including reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## COUNT FIVE
### Action For Equitable Estoppel

67. Plaintiff repeats and asserts the above allegations of this Complaint as if set forth at length herein.

68. Szczykutowicz agreed to the terms of the plan in exchange for benefits under the Health Plan.

69. Said terms included Szczykutowicz's promise to reimburse UHC as required by the "Reimbursement" provision.

70. He also made the following promises related thereto:

- That you will cooperate with us in protecting our legal and equitable rights to subrogation and reimbursement, including:

  - Providing any relevant information requested by us.

      \*       \*       \*

- That you will not do anything to prejudice our right under this provision.

      \*       \*       \*

- You may not accept any settlement that does not fully reimburse the Plan, without its written approval.

15

71. UHC paid the Subject Benefits in reliance on said promises by Szczykutowicz.

72. UHC has been injured by its reliance on said promises as a result of Szczykutowicz's refusal to satisfy the subject lien in accordance with said promises.

73. Szczykutowicz refuses to satisfy UHC's lien on the basis that the Settlement Agreement rendered his workers' compensation claim "non-compensable" (*see* "Exhibit B"), and that "any alleged medical bills past, present and future (or from the date of the occurrence) are now the responsibility of [Szczykutowicz's] private insurance carrier and/or Optum" (*see* "Exhibit D").

74. Szczykutowicz, however, with the assistance and at the direction of KWG&F, entered into the Settlement Agreement as part of a fraudulent scheme to defeat UHC's reimbursement rights.

75. Szczykutowicz claimed in the Workers' Compensation Case that his tetraplegia was compensable and produced evidence in support of such claim.

76. The WCB, based upon said evidence, found that ANCR was established for tetraplegia.

77. Upon information and belief, Szczykutowicz was awarded and received weekly wages based on said finding in the amount of $140,870.40 through the date he entered into the Settlement Agreement.

78. Though he was awarded and accepted said payments based on his claim of tetraplegia, Szczykutowicz, as part of the Settlement Agreement, acknowledged, by way of consent, that his tetraplegia and related medical treatment were non-compensable. He

also withdrew instead of merely waived his workers' compensation claim.  As set forth by the agreement:

> In exchange for this Settlement, the Claimant has agreed to withdraw his claim for causally related tetraplegia and any other injuries associated with [his] workers' compensation claim, with prejudice, upon approval of this Settlement…As a result of the withdrawal of this claim, with prejudice to the Claimant, the parties acknowledge this claim is non-compensable.
>
> \*          \*          \*
>
> As Claimant is withdrawing his claim herein, there was, is and will not be, any compensable medical treatment related to this claim. [*See* "Exhibit B"].

79. Defendants made such terms a part of the Settlement Agreement to try and prevent UHC's lien from attaching to the Settlement Proceeds and, in so doing, defeat its reimbursement rights.

80. Defendants' fraud in such regard is belied by the fact that Szczykutowicz continued to receive wage payments even after the Settlement Agreement was reached by the parties.  Despite withdrawing his claim as part of said agreement and conceding that his tetraplegia was non-compensable in connection therewith, Szczykutowicz, upon information and belief, collected an additional $10,371.84 in wage payments between the time he signed the agreement on June 15, 2020 and the time it was approved by the WCB on September 9, 2020.

81. UHC, as a health insurer, was not allowed by law to actively participate in Szczykutowicz's workers' case and thus had no advance notice or other knowledge of the Settlement Agreement.

82. At no time did the Defendants advise Optum or UHC of their intent to enter into the Settlement Agreement or make any attempt to secure UHC's approval of same. In such way, they were able to keep Optum and UHC from discovering their fraudulent scheme to defeat UHC's reimbursement rights.

83. Not only did the defendants withhold information about the Settlement Agreement from Optum and UHC, Attorney Wolf, in an effort to mislead, told an Optum analyst that the case was on appeal even though he and Szczykutowicz had executed the Settlement Agreement 14 days earlier.

85. In furtherance of Defendants' scheme to defeat UHC's reimbursement rights, KWG&F kept its receipt and disbursement of the Settlement Proceeds concealed from Optum, subjecting the proceeds to potential dissipation.

86. Given the extraordinary circumstances described herein, it would be unjust not to enforce the terms of the "Reimbursement" provision against the Defendants.

WHEREFORE, and pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff demands judgment against Defendants awarding damages in the amount of $217,738.47, together with any judgment and post-judgment interest or other relief to which the Plaintiff is entitled, including reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

> TANSEY TRACY LLC
> 1725 Richmond Road
> Staten Island, New York 10306
> Attorneys for Plaintiff,
> UnitedHealthcare Insurance Company
>
> By: /s/ James N. Tracy

Dated: June 11, 2022